**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

In re: Appeal of John and }
Sharon O' Rear, et al. }
 } Docket No. 2-1-00 Vtec
 }
 }

Decision and Order on Appellants' Motion for Summary Judgment

Appellants appealed from the December 7, 1999 decision of the Zoning Board of Adjustment (ZBA) of the Town of Calais regarding the application of Stanley and Janice Morse and Black Rock Coal, Inc. for a conditional use permit. A number of other individuals and the Town of Calais entered their appearance as interested parties but have not participated in the pretrial conferences or motions briefing. Appellants are represented by Gerald R. Tarrant, Esq.; Appellee-Applicant Black Rock Coal, Inc. is represented by George E. Rice, Esq. Appellants have moved for summary judgment or to ' dismiss' the underlying application.

Appellee-Applicant applied to conduct " extraction of wall stone and crushed stone" on ten acres of a 45-acre parcel of property to be purchased from Stanley and Janice Morse. The property is located in the Rural Residential zoning district, and lies behind the lots fronting on the County Road. The Morses propose to retain a 7.7-acre lot fronting on Bliss Pond Road. Appellee-Applicant' s lot will include a 28-foot-wide strip of land running along the easterly side of the Morse property, and turning at a right angle to include a similarly narrow strip of frontage, 300 feet long, along Bliss Pond Road. This narrow strip of property is not intended for the access road for the project, but instead to provide the frontage required by § III(3) of the Calais Zoning Regulations.

The access road from the working site of the project is proposed to extend to the County Road over a right-of-way over the land of Sandra Guerrette. The application narrative prepared by Appellee-Applicant proposed to extract approximately 8,000 cubic yards of rock material from 10 acres, with the remaining 35 acres to be kept in forest management use. Of the 8,000 cubic yards, the application stated that 3,000 to 4,000 cubic yards will be wall stone to be trucked off site, and the other 4,000 yards of tailings will be crushed on site approximately once a year for approximately three weeks, with the crushed stone offered first to the Town of Calais for road maintenance use.

It is clear from Finding 5 in the ZBA decision that Appellee-Applicant proposed " to remove 8000 cubic yards of slate annually, with 3000 to 4000 of that to be wall stone." Nevertheless, it is equally clear that the conditional use permit issued in the ZBA decision states that it authorizes Stanley and Janice Morse, and Black Rock Coal, Inc., " to extract up to 8,000 cubic yards of slate and granite in total" from the extraction site, and sets various terms and conditions for the operation of the site. (Emphasis added.)

Appellants argue that Appellee-Applicants have only received a permit to extract a total of 8,000 cubic yards of slate and granite from the site, and do not have a permit to extract 8,000 cubic yards annually. Appellee-Applicants' application, when read as a whole, requests permission to extract 8,000 cubic yards annually, and the permit notes that Appellee-Applicants had applied to extract that amount on an annual basis. However, the terms and conditions of the ZBA's decision explicitly authorize Appellee-Applicants only " to extract up to 8,000 cubic yards of slate and granite in total," and does not authorize that amount to be extracted each year. Even if the ZBA had intended to allow the extraction of that amount annually, we cannot expand the express terms of a permit based on discussions during the public hearing or any other expressions of the applicants, the opponents or the ZBA itself. In re Kostenblatt, 161 Vt. 292 (1994); In re Appeal of Farrell & Desautels, Inc., 135 Vt. 614, 616-17 (1978). Therefore, Appellants' Motion for Summary Judgment is GRANTED on this issue. If Appellee-Applicants believe that the ZBA intended to issue a permit for the extraction of 8,000 cubic yards annually, they may move the Court to remand this matter for the ZBA to act on an amendment request.

Appellants also have moved to dismiss the conditional use application now before the Court, arguing that the application is not complete for lack of a validly-issued curb cut or access permit. Section II(11) requires that the zoning administrative officer receive and file the curb cut permit before the zoning permit application may be considered complete. It appears from § II(11) and from 19 V.S.A. § 1111, that such access permits are to be issued by the selectboard, and that the one at issue in the present case was not issued by the selectboard. Accordingly, the application is not complete. However, as the matter is de novo before this court, Appellants' Motion to Dismiss is DENIED. It will be sufficient in the hearing on the merits for Appellee-Applicants to demonstrate that the application is complete at that time.

Appellants argue that the frontage required by § III(3) of the Zoning Regulations must be the frontage actually used for access to the project. However, nothing in the Zoning Regulations contains this requirement. The Zoning Regulations only require that property must either have the required amount of frontage or the applicant must have an approved access right-of-way. With the required amount of frontage, even if unused, an applicant need not have an alternate access right-of-way approved. Accordingly, Appellants' Motion for Summary Judgment is DENIED and Summary Judgment is entered in favor of Appellee-Applicant on the issue of whether § III(3) requires that the frontage required by that section also be the location of the project's actual access to a public road.

Appellants argue that slate and granite extraction is not an allowed use in the Rural Residential District, that is, that it does not qualify either as a permitted use or as a conditional use in the district. In making this argument, Appellants rely on a technical distinction[1] between the term " rock" and the term " mineral." Further, Appellants argue that even if the extraction of the material is an allowed use, its processing and storage is not an allowed use in the district. Material facts are in dispute as to the technical and common usages of the terms at issue. Material facts are also disputed as to the nature, extent and duration of the extraction and processing techniques proposed to be used by Appellee-Applicants and as to the noise, dust and other consequences to be anticipated from those techniques. Moreover, the conditional uses allowed in the Rural Residential District include a category, § IV(2)(c)(11), of " any other use or land development

not specifically described above, but deemed consistent with the purposes of this district by the Board of Adjustment."

Accordingly, based on the foregoing, Appellants' Motion for Summary Judgment is GRANTED on the issue that the conditional use permit as granted by the ZBA by its terms authorizes extraction of a total of 8,000 cubic yards, and not 8,000 cubic yards annually. Appellee-Applicants may apply to the Court for a remand to the ZBA if they wish to seek an amendment of the permit as issued, or to seek clarification or reconsideration by the ZBA of its action.

Appellants' Motion for Summary Judgment is DENIED on the issue that the application is not complete for lack of a validly-issued curb cut or access permit; Appellee-Applicants may present evidence on the then-present status of that permit at the hearing now scheduled for March 19 through 23, 2001.

Appellants' Motion for Summary Judgment is DENIED and Summary Judgment is entered in favor of Appellee-Applicant on the issue of whether § III(3) requires that the frontage required by that section also be the location of the project's actual access to a public road.

On the remaining issues, Summary Judgment is DENIED as material facts are in dispute, at least as to whether the proposed use is consistent with the purposes of the district. The hearing on the merits of this appeal remains scheduled for March 19 through March 23, 2001, at the Washington County Probate Court on Elm Street in Montpelier, located directly to the rear of the Washington Superior Courthouse.

Done at Barre, Vermont, this 22nd day of February, 2001.


_____

Merideth Wright
Environmental Judge




**Footnotes**

[1]    This argument may be somewhat undercut by the use category provided in §IV(2)(c)(11).