STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 140-9-14 Vtec |
|---|---|
| Foss NOV (Shared Parking) | DECISION ON MOTION |

### Decision on Motion for Summary Judgment

The matter before the Court relates to property at 2917 LaPorte Road in the Town of Morristown, Vermont (the Property). In 2010, owner Allen Foss received approval from the Town of Morristown Development Review Board (DRB) to subdivide the Property into two lots. The Property was again subdivided from two to three lots in 2011. Also in 2011, Mr. Foss applied for a conditional use permit to construct a 2,640 square foot building on the newly created Lot 3 (CU Permit). Mr. Foss subsequently sold Lot 3 to Green Mountain Distillers, which constructed a building in the footprint and operating under the same use as that approved by the DRB by the CU Permit: business/professional offices, direct sale of goods produced on site, light industry, manufacturing, and wholesale distribution.

On July 17, 2014, the Morristown Zoning Administrator (ZA) issued Mr. Foss a Notice of Violation (NOV) for his refusal to allow Green Mountain Distillers access to shared parking on Lot 1 in violation of the CU Permit. Mr. Foss appealed the NOV to the DRB on the grounds that shared parking was not requested as part of the application for, nor a condition of, the CU Permit. The DRB affirmed the NOV and Mr. Foss timely appealed that decision to this Court and now moves for summary judgment in his favor. The Town opposes summary judgment, alleging a dispute as to material fact. Mr. Foss is represented by Paul S. Gillies, Esq. and the Town of Morristown is represented by Timothy W. Sargent, Esq.

## Factual Background

For the sole purpose of putting the pending motion into context the Court recites the follow facts which it understands to be undisputed:

1. Allen Foss owns property located at 2915 and 2917 LaPorte Road, Morristown, Vermont (Property).

2. In a decision dated July 28, 2011, the Morristown Development Review Board (DRB) approved an application to reconfigure the existing lots on the Property and create a third lot (Lot 3).

3. In a separate decision dated July 28, 2011, the DRB approved Mr. Foss's conditional use application to construct a 2,640 square foot building on the newly created Lot 3 for use as business/professional offices, direct sale of goods produced on site, light industry, manufacturing, and wholesale distribution.

4. Mr. Foss's application included a site plan dated April 11, 2011 (site plan) and an undated sketch entitled "parking/landscaping" (parking/landscape plan).

5. The site plan indicates 13 parking spaces on Lot 1, numbered 1 through 13, and 4 parking spaces on Lot 3, numbered 1 through 4.

6. The parking/landscaping plan is hand-drawn and indicates 15 parking spaces along the front and sides of the structure on Lot 1 and 4 parking spaces along the side of the structure proposed for Lot 3. The parking spaces are not numbered sequentially; they are marked with lines to designate each spot and a number corresponding to the total number of spaces in each cluster. The spaces in Lot 1 are depicted in four clusters of 3, 4, 6, and 4 spaces each. The spaces in Lot 3 are depicted in a single cluster of 4 spaces.

7. In 2013 Mr. Foss sold Lot 3 and the CU permit to Green Mountain Distillers.

8. On July 17, 2014 the Morristown Zoning Administrator (ZA) issued a Notice of Violation for Mr. Foss' refusal to allow Green Mountain Distillers access to the parking spaces on Lot 1 in violation of the CU Permit.

9. Mr. Foss appealed the NOV to the DRB, which upheld the ZA's decision. Mr. Foss timely appealed the NOV to this Court.

**Analysis**

Mr. Foss moves for summary judgment on both Questions 1 and 2 of his Statement of Questions. Question 1 asks whether shared parking is a condition of the CU Permit and if not, whether conditions implied but unstated in the application or permit can form the basis for an NOV. Question 2 asks whether the NOV should be denied or affirmed. The Town argues that the DRB conditioned its approval of the CU Permit on the site plan and parking/landscaping plan, both of which include depictions of all three lots and the parking spaces thereon. The Town therefore contends that the parking spaces on all three lots—four on Lot 3 and 15 on Lot 1—were part of the permit application and approval rather than just the four spaces on Lot 3.

## I. Summary Judgment Standard

The Court will grant summary judgment to a moving party upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). We must "accept as true the [factual] allegations made in opposition to the motion for summary judgment" and give the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citation omitted); see V.R.C.P. 56(c) (laying out summary judgment procedures). The Court "need consider only the materials cited in the required statements of fact, but it may consider other materials in the record." V.R.C.P. 56(c)(3). What facts are material in any case, however, is determined by the legal issues properly raised in the pending litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Stated differently, an alleged fact may be substantive but may only be deemed material if it is pertinent to the legal issues presented. Id.

## II. Question 1

The parties debate whether the CU Permit includes 9 offsite parking spaces benefitting Lot 3. Mr. Foss argues that shared parking is not indicated on the site plan or parking/landscaping plan and is not, therefore, a condition of the CU Permit. For this reason, Mr. Foss argues that the Town cannot rely on the lack of shared parking as the basis for an NOV. The Town disagrees, however, and contends that shared parking is indicated on the site

3

plan and parking/landscaping plan and because the CU Permit is conditioned on the site plan and parking/landscape plan, shared parking is a condition of the CU Permit.

The approved description of a project, as articulated by the site plan, is itself a permit condition. See In re Jackson, 2003 VT 45, ¶ 29, 175 Vt. 304 (citing In re Duncan, 155 Vt. 402, 410 (1990)) (recognizing the approved description of the project, including application and attachments as a binding permit condition). Such conditions, however, must be expressed with sufficient clarity to give notice of the limitations on the use of the land. Appeal of Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978) ("Conditions imposed by a zoning board must be expressed with sufficient clarity to give notice of the limitations on the use of land, and cannot incorporate by reference statements made by an applicant at a hearing."); Clayton v. Clayton Investments, Inc., 182 Vt. 581 (2007) ("Permit conditions must be explicit and 'must be expressed with sufficient clarity to give notice of the limitations on the use of the land.'") (citations omitted)). Therefore, although the development of Lot 3 must conform to the Project as represented by the site plan and parking/landscaping plan, such conformance is limited to that which is clearly and expressly depicted and does not extend to those elements unstated or implied.

It is undisputed that the CU Permit does not include an express condition on shared parking between Lots 1 and 3. Although the site plan and parking/landscaping plan both depict parking spaces on Lots 1 and 3, nothing on either plan indicates that these parking spaces are shared between the two lots. The Town argues that because the site plan was submitted as part of Mr. Foss' application for conditional use approval for Lot 3, the inclusion of parking spaces on Lot 1 implies that those spaces are to be shared by Lot 3. By this logic, the Town could also infer that the structures on Lots 1 and 2, which are also depicted on the site plan and parking/landscaping plan, are shared by Lot 3. Such conclusions are illogical. The Town cannot rely on inferences to impose as conditions because without clarity, the landowner has no notice of the limitations on their use of the land.

Further, the site plan, which depicts all 13 parking spaces on Lots 1 and 3, does not clearly imply a shared parking scheme between the lots. Although the site plan includes the parking spaces on both Lots 1 and 3, the spaces are numbered discretely on each lot. This

implies that the parking spaces are assigned to each lot individually rather than shared between the two. This is demonstrated by labeling each parking space on the respective lots with numbers in sequential order: there are 9 parking spaces on Lot 1, each one labeled from 1 to 9, and 4 parking spaces on Lot 3, each one labeled from 1 to 4. If the intent was to share parking spaces among the two lots, it is logical to expect the numbering to continue from 1 to 13 across both lots.

The Town makes several additional arguments to support a finding that shared parking is a condition of the CU Permit. It argues that shared parking can be implied by the fact that the total number of parking spaces on Lots 1 and 3 corresponds to the number required for business/professional offices, direct sale of goods produced on site, light industry, manufacturing, and wholesale distribution under the Bylaws. The number of required parking spaces for this use is based on 2,640 square feet of gross leasable space divided by 180 square feet, or 15 spaces. Compliance with this requirement is not expressly addressed in either the application or the Town's approval. As stated above, limitations "'that are not stated on the permit may not be imposed on the permittee.'" In re Stowe Club Highlands, 164 Vt. at 276 (quoting In re Kostenblatt, 161 Vt. 292, 299 (1994)). Considering that the CU Permit was deficient for the DRB's failure to require more than four parking spaces for the 2,640 square foot building, the appeal period has passed and the CU Permit is final and binding as is, even if it is in error. 24 V.S.A. § 4472; City of Burlington v. Dept of Corrections, 171 Vt. 587 (2000); Town of Sandgate v. Colehamer, 156 Vt. 77, 84 (1990).

The Town also argues that it was unnecessary to include shared parking as an express condition in the CU Permit because Mr. Foss owned all three lots at the time of the permit application and at the hearing on his application, Mr. Foss stated that anyone could park anywhere that visited his development proposed for Lot 3. These facts do not support implying conditions into the CU Permit. Regardless of the discussion at the hearing or the internal considerations which prompted the DRB to grant the CU Permit, we cannot imply conditions respecting some future use of land. In re Farrell & Desautels, Inc., 135 Vt. 614, 616 (1978) ("We cannot subscribe to the proposition that a formal written order which contains some express

5

terms and conditions can also be said to carry with it silent and unexpressed terms and conditions.").

Finally, the Town argues that shared parking was a condition of the sale of Lot 3 to Green Mountain Distillers. Although this may or may not be true, the Court emphasizes that the issue of whether shared parking was a condition of Green Mountain Distiller's acquisition of Lot 3 is a private property dispute outside this Court's jurisdiction.[1] This argument highlights, however, that "one need only consider the plight of a subsequent purchaser in order to perceive the sagacity of the requirement that conditions imposed be express, and that conditions not expressed in the findings and order be disregarded, whatever the state of mind and unexpressed considerations of the adjudicative body." Id. at 617.

### Conclusion

For the above reasons, the CU Permit does not include a condition mandating shared parking between Lots 1 and 3. The ZA cannot enforce such a requirement on the basis that shared parking is implied or that it is inferred from the site plan or parking/landscaping plan. We therefore **GRANT** Mr. Foss' motion and enter judgment in his favor on both Questions in this appeal. A judgment order accompanies this decision.

Electronically signed on July 30, 2015 at 11:11 AM pursuant to V.R.E.F. 7(d).

_Tom Walsh_
_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

---

[1] As indicated by Mr. Foss in his Motion for Summary Judgment, litigation regarding the property dispute is pending in the Civil Division of the Lamoille Unit of the Vermont Superior Court. Our decision does not, in any way, bear on the outcome of the parties' dispute as to property rights as raised in that litigation.

6