2008 VT 77

**In re Appeal of VAN NOSTRAND and Van Nostrand ROW Application #2005-03**

[957 A.2d 399]

No. 07-229

¶ 1. June 2, 2008. Linda Nordlund appeals from a judgment of the Environmental Court granting Ronald and Elizabeth Van Nostrand's application for a zoning permit to construct a single-family residence and septic system on their twenty-four-acre lot in the Town of Salisbury. Nordlund contends that the court erred in ruling that the lot is served by a legally nonconforming right-of-way and therefore is not subject to the current zoning bylaws requiring a fifty-foot right-of-way for parcels lacking frontage on a public road. We reverse and remand.

¶ 2. This is the second appeal arising out of a dispute between adjoining land-

owners. *Nordlund v. Van Nostrand*, No. 2007-027 (Aug. 17, 2007) (unreported mem.) sets forth many of the underlying facts, which we summarize as follows. The Van Nostrands own two lots on the westerly side of West Shore Road near Lake Dunmore. The first lot (the front parcel) is approximately 1.1 acres with frontage on West Shore Road. The second adjoining lot (the back parcel) is an interior lot of approximately twenty-four acres with no road frontage. The back parcel is benefited, however, by a right-of-way — described in a number of deeds as an old logging road — which traverses the Van Nostrands' front parcel for about 150 feet and then continues across the northwest corner of a lot owned by Nordlund for about forty-four feet before connecting with the Van Nostrands' back parcel.

¶ 3. In April 2000, the Van Nostrands' predecessors-in-interest, the Kycias, applied for and received a permit from the town to subdivide the front and back parcels. The permit application is not a part of the record. The permit itself consists of a preprinted, one-page form labeled "zoning permit" that includes a checked box indicating the "permit type" as "subdivision," a hand-written description of the permitted work as "single-lot subdivision," and conditions calling for a "revised plat record and/or warranty deed" to be filed in the town land records.[1] Although § 502 of the town's zoning regulations then in effect prohibited "land development" on lots that lacked either road frontage or a "permanent easement or right-of-way at least twenty (20) feet in width," the permit makes no reference to this zoning requirement and contains no findings concerning the nature, width, accessibility, or safety of the right-of-way across the

---

[1] The permit indicates that it was a "renewal" of an earlier permit issued in 1999, but this earlier permit was not made a part of the record.

Nordlund property. No appeal was taken from the issuance of the 2000 permit.

¶ 4. In May 2000, the Kycias conveyed the front and back parcels in separate deeds to the Van Nostrands, and in April 2004, the Van Nostrands applied for permits to construct a four-bedroom, single-family residence and supporting septic system on the back parcel. The zoning administrator issued the permits, but Nordlund appealed the decision to the Development Review Board (DRB). Following a hearing in October 2004, the DRB voted to reverse the issuance of the permits, citing § 502 of the zoning regulations, which had been amended in 2002 to increase the width of the required right-of-way to fifty feet. The Van Nostrands appealed the DRB ruling to the Environmental Court, and while that appeal was pending, submitted a second application to the town for a variance to reduce the width of the necessary right-of-way to twenty feet. The DRB denied the application for a variance, and the Van Nostrands appealed this ruling to the Environmental Court, which consolidated the two appeals for review and decision.

¶ 5. In January 2006, the court issued a written decision on the parties' cross-motions for summary judgment. At the outset, the court observed that issuance of the subdivision permit to the Van Nostrands' predecessors-in-interest in 2000 clearly did not create a vested right to obtain a zoning permit under the regulations in effect when the permit was granted. See *In re Taft Corners Assocs.*, 171 Vt. 135, 144, 758 A.2d 804, 811 (2000) (holding that "the balance of competing policy interests [militate] against giving holders of subdivision permits vested rights to zoning permits under the zoning ordinance applicable when the subdivision permit was sought or obtained"). The court went on, however, to conclude that the back parcel "became a [legal] pre-existing non-conforming lot" in 2002 when the town amended § 502 to require a

right-of-way of no less than 50 feet because the "right-of-way width was deemed in compliance with the zoning regulations [then in effect] when its subdivision was approved" in 2000.

¶ 6. Thus, contrary to the conclusion of the DRB, the court determined that the Van Nostrands were not required to demonstrate compliance with § 502, because that issue had been implicitly resolved when the subdivision permit issued. The only question that remained, in the court's view, was whether the proposed development of the back parcel would " 'increase' the non-conformity of the right-of-way," resulting in a narrowing of the road. See *In re Miserocchi*, 170 Vt. 320, 326-27, 749 A.2d 607, 611 (2000) (although traditionally disfavored, changes to nonconforming uses are often allowed if they do not increase the nonconformity). The court ruled that this was an issue which involved disputed questions of fact requiring an evidentiary hearing, and directed the parties to prepare to address the issue at trial. In light of its ruling, the court determined that the Van Nostrands' variance application was moot, and declined to address the issue on appeal.

¶ 7. Subsequent to the court's ruling, but before the scheduled evidentiary hearing, Nordlund filed a quiet-title action in the superior court seeking to invalidate the claimed right-of-way across her property. In December 2006, the superior court ruled that the right-of-way was valid and that its width across the Nordlund property was eighteen feet. Nordlund appealed, and we affirmed the judgment. See *Nordlund*, No. 2007-027, slip op. at 3-4.

¶ 8. Thereafter, in the pending action before it, the Environmental Court denied a series of additional motions and held a one-day trial in March 2007. The following May, the court issued its decision, finding that the proposed development of the back parcel would not in-

crease the nonconformity of the right-of-way. Accordingly, the court approved the Van Nostrands' application for a zoning permit to construct a single-family residence and septic system on the back parcel, and entered a final judgment in their favor. This appeal followed.

¶ 9. We agree with the trial court that this case turns largely on "the context and relevancy of [the] 2000 subdivision permit." However, we disagree with the court's key conclusion that the right-of-way across the Nordlund property "was deemed in compliance with the zoning regulations [then in effect] when [the] subdivision was approved" in 2000. It is, of course, axiomatic that, when zoning bylaws are in effect, "no land development may be undertaken or effected except in conformance with those bylaws." 24 V.S.A. § 4446; see *In re Kostenblatt*, 161 Vt. 292, 300, 640 A.2d 39, 44-45 (1994) (zoning permit need not identify all applicable zoning requirements for those requirements to be applicable and enforceable). Therefore, in many, if not most, cases it may indeed be reasonable to infer from the issuance of a land development permit a tacit finding that the proposed development complies with applicable zoning requirements. See *Drumheller v. Shelburne Zoning Bd. of Adjustment*, 155 Vt. 524, 527 n.3, 586 A.2d 1150, 1151 n.3 (1990) (noting that planning commission could not approve a subdivision that violated minimum-lot-size requirements of zoning ordinance); *Wright v. Preseault*, 131 Vt. 403, 411, 306 A.2d 673, 678 (1973) (observing, in denying a motion for reargument, that the planning commission "cannot be said, as the appellants maintain, to have approved a development plan not in conformance with the zoning by-laws").

¶ 10. This is not, however, such a case. To be sure, the trial court's reasoning — up to a point — is sound. Consistent with the statutory definition set forth in 24 V.S.A. § 4303(10), the town's zoning regulations define "land development" to include "the division of a parcel into two or more parcels." Salisbury Zoning Regulations, § 130. Furthermore, as noted, the town's zoning regulations prohibit any "land development" on lots lacking either road frontage or access by means of a permanent right-of-way measuring, at the time of the 2000 subdivision permit, twenty feet in width. It is tempting, therefore, to conclude — as did the trial court here — that the right-of-way access across the Nordlund property was necessarily "deemed in compliance" with § 502 by virtue of the final subdivision permit.

¶ 11. A subdivision application, however, implicates an array of associated planning and zoning issues relating to improvements such as streets, sidewalks, utilities, stormwater-control measures, and access roads. Indeed, when the subdivision permit at issue here was granted, state planning law required that municipal subdivision regulations set forth "[s]tandards for the design and layout of streets, curbs, gutters, street lights, fire hydrants, shade trees, water, sewage and drainage facilities, public utilities and other necessary public improvements." 24 V.S.A. § 4413(a)(2).[2] The safety and adequacy of access roads is a matter of particular significance in the subdivision review process. As we have observed, "[a] major purpose of modern subdivision regulation is to locate roads and ensure that they are adequate not only for land owners they immediately abut but also for others who may pass over them to other destinations." *In re Shantee Point, Inc.*, 174 Vt. 248, 255-56, 811 A.2d 1243, 1250 (2002).

¶ 12. We have also recognized that "[t]here is some overlap between zoning and subdivision regulation because the

[2] This section has since been repealed and replaced by 24 V.S.A. § 4418(1)(B), which contains similar standards and requirements.

definition of 'land development' for purposes of zoning regulation includes the division of parcels, the trigger for subdivision regulation." *In re Taft Corners*, 171 Vt. at 138, 758 A.2d at 807. Hence, even when a municipality has not adopted subdivision bylaws, the municipality "may use zoning regulations to perform at least some of the functions of subdivision regulations." *Id.* at 138, 758 A.2d at 807-08. Whichever approach a municipality chooses, however, its subdivision-review process should reflect the application of at least minimal standards to ensure fairness and rationality in the planning process. *In re Miserocchi*, 170 Vt. at 325, 749 A.2d at 611-12 (adequate guidelines are essential to ensure due process in zoning decisions).[3]

¶ 13. The town here has not enacted subdivision bylaws and therefore relies on its zoning bylaws for subdivision regulation. Nothing in those bylaws, however, requires that subdivision applications meet any standards for safety or adequate street or utility improvements, and nothing in the record suggests that the planning commission undertook any such review or applied any such analysis to the 2000 subdivision application, even to determine whether it satisfied the minimal twenty-foot right-of-way requirement for land development. Indeed, the superior court's finding that the "old logging road" in question measured about eighteen feet suggests, on the contrary, that no such review was undertaken. We cannot reasonably conclude, therefore, that issuance of the 2000 subdivision permit implied a conformity with § 502 of the zoning regulations. Hence, the trial court's finding that the Nordlund right-of-way necessarily complied with applicable zoning regulations by virtue of the subdivision permit was erroneous, and must be reversed. To be clear, we do not hold that the 2000 subdivision permit is invalid, a result that would plainly contravene the prohibition against collateral attacks on zoning permits that have not been appealed. See 24 V.S.A. § 4472(d); *City of S. Burlington v. Dep't of Corr.*, 171 Vt. 587, 588-89, 762 A.2d 1229, 1230 (2000) (mem.). We simply decline to invest that permit with a scope or significance beyond its necessarily limited reach.

---

[3] Recent legislation had made clear that even towns without specific subdivision bylaws must apply minimal standards to ensure safe and adequate access in reviewing subdivision applications. Thus, 24 V.S.A. § 4412(3) provides:

> Land development may be permitted on lots that do not have frontage either on a public road or public waters, provided that access through a permanent easement or right-of-way has been approved *in accordance with standards and process specified in the bylaws*. This approval shall be pursuant to subdivision bylaws adopted in accordance with section 4418 of this title, *or where subdivision bylaws have not been adopted or do not apply, through a process and pursuant to standards defined in bylaws adopted for the purpose of assuring safe and adequate access*. Any permanent easement or right-of-way providing access to such a

road or waters shall be at least 20 feet in width.

(Emphasis added.) Section 4418, the successor to § 4413(a)(2), sets forth minimal standards for towns that choose to adopt subdivision bylaws, and similarly provides that "[s]tandards in accordance with subdivision 4412(3) of this title shall be required for lots without frontage on or access to public roads or public waters." *Id.* § 4418(1)(B).

¶ 14. We conclude, in sum, that the trial court incorrectly determined that the Van Nostrands were not required to demonstrate compliance with § 502 of the zoning regulations. Furthermore, inasmuch as it is undisputed that the right-of-way across the Nordlund lot does not exceed eighteen feet in width, it is equally clear that the proposed development cannot satisfy the regulations' minimum width requirement. Accordingly, the trial court judgment granting the zoning application for construction of a singly-family residence and septic system must be reversed. The trial court did not reach the appeal of the Van Nostrands' application for a variance from this width requirement, and the case is therefore remanded for this limited purpose.[4]

*Reversed and remanded.*

---

[4] We note that there is some evidence in the record to indicate that the Van Nostrands have simultaneously sought approval of a fifty-foot right-of-way that runs exclusively across their own front parcel. Obviously, if they decide to proceed on the basis of this alternative right-of-way, the variance issue may again become moot.